Good morning. I'm Michael Rothschild. I represent Mr. Hatton. I'd like to discuss today or continue a discussion that we began in our supplemental brief about how the factors in the Smith case in the United States Supreme Court, when applied to the facts of this case, compel the conclusion that this is an ex post facto statute, emphasizing the factor about whether there's a rational connection to a non-punitive purpose. I'd then like to go on briefly to indicate why the California Supreme Court, or I should say how the California Supreme Court in the Castellanos case went awry in its decision and how it really didn't have to do that. And I'm going to be relying by analogy to, or actually expressly upon Justice Souter's concurring opinion in Smith, the quote we had in our supplemental brief. With regard to the intent effects test, which is really where we have to begin, if we're looking at the intent of the legislature in this case, let's compare it with the Alaska statutory scheme in Smith. The registry for sex offenders in Alaska is maintained by the Department of Public Health, which is a regulatory agency. In California, it's maintained by the Department of Justice, which is the chief law enforcement officer of the state of California. In Alaska, the notification provisions are found within the Health, Safety, and Housing Code. And the registration provisions are within the Criminal Procedure Code, which is the latter, which contains numerous unquestionably civil provisions. In California, it's contained within the Penal Code. And as we've indicated in two of our briefs, it's at the part of the Penal Code that defines very serious offenses. It's lumped within the same chapter and in consecutive numbering, for example, with sodomy, incest, forcible sexual abuse of a small child, and so forth. In the state of Alaska, the Act itself had no procedures, as far as its enforcement is concerned, contained within the Act and deferred its means of implementation to the Department of Public Safety, a regulatory agency. In California, the procedures are set forth specifically within the Penal Code and within the penal provisions of the Penal Code. As an aside, also, in one of the cases that I indicated today I'm going to add, which I've discussed with the Board, the state of Alaska has a very strict law enforcement opposing counsel. In People v. McClellan, the California Supreme Court stated, at least as far as in plea bargaining situations, that the trial court must inform a defendant at the time of their plea in a criminal case of the consequences of registration. And that is something that the appellate courts look at in looking at the intent of the statute. Moving to the effects branch of the intent effects test, in Alaska, the disability presented and the restraint was minor. It doesn't restrain activities sex offenders could pursue, but leaves them free, jobs, residence to move. In California, you have to look beyond the Penal Code for some examples of the draconian consequences that flow from the Penal Code. We cited in our brief Education Code section 44010. That was incomplete. In reviewing it over the weekend, I realized that we had to cite also the companion Education Code section 44346, which we've added by note today. Because 44346 cross-references to 44010. And what 44346 of the Education Code says is that the following people cannot obtain a teaching credential in California. Sexual psychopaths, those convicted of serious felony-controlled substances, those found the court to be criminally insane, and those who registered under Penal Code section 290. Now, there's no doubt that there are some people who have to register under 290 who should most likely be in prison the rest of their life and clearly never, ever get a teaching credential. But the problem with 290, and this is my reference to Justice Souter's concurring opinion, is it's overbroad. And in the example we provided in our briefs, the 18-year-old young man who engages in sexual foreplay with his 16 or 17-year-old girlfriend and gets caught, and they only engage in foreplay because they don't want to, quote, go all the way, so to speak. That is a registrable sex offense. That is Subdivision 2A1, if I recall correctly, of Penal Code section 288A. And we have to be careful here because in California there's Subdivision A of 288, and then there's 288A, which is a separate statute, which is the Oral Copulation Statute, and the latter is the one I'm referring to. So here we have a young man who decides, for whatever reason, with his girlfriend they don't want to go all the way, get caught. He has to register as a sex pervert. And he's treated by the Education Code the same way as a sexual psychopath and a person found to be criminally insane. So we have an overbreadth problem here. Continuing, in Alaska, the offender need not update their registration in person. In California, the registrant must personally go to the police station, the sheriff's department, and register within five days, for example, of their birthday. They can't simply mail in a card. And you must consider, and one can't ignore the California Three Strikes Law, because there are people being sent to prison for 25 years to life in California for failure to register, if, for example, there were two counts of sexual touching in the underlying offense. And it just seems to make no sense to say that in a regulatory statute you can go away to prison for life. At the other extreme, those that register are the usual suspects. The statute goes back to the 1872 statutes where they talk about rounding up the usual suspects. So a person that's registered has a higher chance of being in a lineup, of being possibly, God forbid, falsely accused of another charge. So that is something that follows them always. And that ties to the fact that in California, unlike in Alaska, one has to register as a sex offender for the rest of their life. In Alaska, for the less serious type of offenses, it was only 15 years. The most significant factor that the appellate courts characterize as the most significant factor is whether there's a rational connection to a nonpunitive purpose. And that's the overbreadth requirement that I've been talking about. That's the overbreadth requirement that Justice Souter talks about in his concurring opinion in Smith. I won't reread the quote. You have it in our supplemental brief. That is what he is talking about. There is something that overrides all of this, however. Before you leave the something that overrides it all, because I know you want to move on to another thought, the California Supreme Court has said either once or twice that the statute has a nonpunitive purpose, that it is regulatory in nature. Ordinarily, sitting as a federal court, the state court has the last word on the meaning of a state statute. And at least to some extent, that is an interpretation of state law as to the purpose of the state legislature. What effect, in your view, must we give to the California Supreme Court's statement as to the purpose of the act? It must be obviously respected. It must be acknowledged. But it must be looked at closely. And when you look closely at the decision, the most recent one being the Castellanos decision, for example, and if you look at footnote five of the majority opinion and then read footnote five of the Castellanos case, which says they are expressly not going to apply the intent effects test that the federal courts apply in ex post facto. And then you read Justice Kennard's concurring opinion, which chastises her colleagues for precisely doing that and not applying the federal analysis. That is one criticism of Castellanos. But there's something else. Except that I guess my point was exactly that, that with respect to what the state law means, the state court doesn't have to apply a federal analysis. You understand my point? If a statute says X and the state supreme court says this is what X means, why aren't we bound by that as a matter of state law, not as to how it may play out later, but as a matter of state law? Well, since you qualified it as a matter of state law only, I'll answer it as to a matter of state law only without reference to the United States Constitution and all of the cases that say that that really does control. The facts in Castellanos under state law are unique, and the law in Castellanos was unique in this respect. What was before the California Supreme Court in Castellanos was subdivision A2E of penal code section 290. Now, section A2E is the only part of 290 which is not overbroad. In other words, A2E states that any judge in any case where the judge makes the discretionary call that the criminal act was for sexual compulsion or sexual gratification as the motivating force behind the criminal act, then there's registration. In other words, it's not a laundry list. And as to that subdivision of penal code section 290, which was before the California Supreme Court in the Castellanos case, I have no quarrel because there you have a discretionary call that the trial judge makes upon the facts of the case and says this person is dangerous and this person should register, and it avoids all the overbreadth requirements that Justice Souter was concerned about and then emerging upon this court. So on the facts of that case and on the part of penal code section 290 under California law that the California Supreme Court was looking at in Castellanos, I have no quarrel. It's that part of section 290 and the application of it which does bear a rational relationship to a legitimate regulatory purpose, so to speak, because a judge, a judicial officer, is making a determination that this defendant is dangerous. That's akin to the Washington procedure in Russell v. Gregory that this court decided where they had, I believe, a commission or a committee that evaluated dangerousness of the offender for purposes of deciding whether or not to place them and how to place them in a statutory scheme within the state of Washington. So that's what was before the California Supreme Court in Castellanos. It also had a unique factual pattern in that case also in that the law was changed. A2E, the subdivision we're talking about here, was added between the time of the plea and the time of the sentence being imposed. So the defendant really couldn't make any claim about notice, which is the first third, so to speak, of our argument on behalf of Mr. Hatton. So really, Castellanos can be approached three ways. One, the statute was amended while the case was pending and before sentencing occurred. The defendant did not move, as I recall in the facts, to withdraw his plea and went ahead and allowed the sentencing to occur. Two, the subdivision of Penal Code Section 290 that was before the court in Castellanos allowed the court to have, in fact, returned and was prerequisite that the trial judge would have discretion to decide whether to have registration or not. And three, the high court in California expressly disavowed and declined to follow or apply the federal mandates as far as evaluating for ex post facto. And I think that's a very, very, very important point. The final point before my time runs out, because I'd like to reserve about a minute to a minute and a half if I could, please, is in looking at the intent behind these, if we just step back a little bit, the federal statute that has mandated Megan's Law throughout the United States has tied federal funding for criminal justice grants, if I recall correctly, to whether or not they have that statute, is entitled, quote, the Crimes Against Children and Sexually Violent Offender Registration Act. This is found early on in the Smith opinion. Crimes Against Children and Sexually Violent Offender Registration Act. Now, compare that to sexual battery in California, as we discussed it in our brief, between a male and an adult female in a bar. Absolutely inappropriate conduct. Absolutely appropriate for a court to intervene. But is this the kind of thing where someone would have to register, for example, and then if they went to college after they grew up and got hopefully more mature, have to report to the campus police that they're registered? Not the dean of students, but to the campus police. So this is a very serious concern that affects young people throughout the state, and it all ties to over breadth, and I'd like to save a few seconds. One question. Did you make your over breadth argument to the state courts? We made an ex post facto argument in the state court. I don't know that it was formulated precisely that way, and I know that the state court decision in the court of appeal did not discuss it. Yeah. But we did make it in the Eastern District. Okay. Thank you. Thank you. We'll hear from Ms. Neal. May it please the Court? Janet Neely, Deputy Attorney General, appearing on behalf of the people. This appeal is limited to two issues. The two issues that were dealt with in the district court were whether or not applying the state sex offender registration law to petitioner violated the ex post facto clause and whether or not his due process rights based on a claim of inadequate notice were violated. The state court decision on both these points was not unreasonable, and, in fact, Supreme Court cases in both areas support the decision of the state court and the subsequent decision of the district court. In the ex post facto context, the Smith v. Doe case, which was decided this year by the United States Supreme Court, vindicates the decision of the state court, which, as this Court has noted, is based on the California Supreme Court's own interpretation of the registration statute, which finds it's a regulatory, not a punitive statute. I can go through, if you'd like, some of the factors that would illustrate clearly that if the Alaska statute is not punitive for purposes of the ex post facto clause, there's no way that the California statute could ever be found to be punitive for purposes of the ex post facto clause. My colleague went through a few factors, so if you'd like, I'll enumerate some other ones. California's registration law was enacted in 1947, retroactive to 1944, and our notification statute, our Megan's Law, which is not at issue here, no due process claim has ever been raised below in this case based on notification to the public. But that law was not enacted until 1996, so California doesn't have a unitary scheme unlike Alaska, which enacted theirs together, and so our scheme is unlikely to be considered as one for purpose of meeting constitutional requirements. We're only looking here at our registration law. California does not require, unlike Alaska, that advisement of the registration duty be made a part of the criminal judgment. Rather, notice is given after the time of conviction by either the prison authority or the jail or the probation officer that registration is required, so it's not part of a judgment. Although my colleague notes that in a plea bargain situation, there is a California Supreme Court case from the early 90s holding that advisement should be made at the time of the plea, that holding is questionable in light of Castellanos. Once Castellanos held that registration is a regulatory duty and not a punitive statute, it calls into question the decision in McClellan, which was the case holding it had to be advised at the time of the plea, because if it's not a punitive statute, then it's probably no longer a direct consequence of the plea, but rather a collateral consequence, and so it's questionable even in the plea bargain situation now whether advisement would have to be made prior to conviction. The California legislature enacted an uncodified preamble to Section 290 at the time we enacted our Megan's Law in 1996, which expressly states that the intent of the registration statute is not punitive, but for public safety purposes, and the California Supreme Court so noted in its opinion in Castellanos. Under California law, unlike Alaska, registrants only re-register annually, except for a very small proportion of registrants who are either transient and harder to track or sexually violent predators who have a much higher recidivism risk. Most significantly for purposes of the Ninth Circuit and then the Supreme Court's subsequent reversal was the notice that was given to the offenders, and again, the notice was not at issue in this case, but this was significant to the Ninth Circuit and subsequently to the Supreme Court and their decisions under the Alaska statute, because their Internet site published the addresses and employer information to the whole world of all registered sex offenders in Alaska. In California, we do not have currently an Internet site. We have a site which can only be accessed by the public if they go into a police station, present California identification, prove that they're a California resident, and then they can look at some of the registered sex offenders, but not all. There's a category of sex offenders whose offenses were not considered serious enough or at least present enough risk of recidivism to place them on the public site when the statute was originally enacted, so that's a major difference from the Alaska statute. Alaska also extended the registration period for offenders who violated the registration law. California does not do so. California's offenders, I think I mentioned, register only once a year unless they are in this narrow category of transients. And in California, unlike Alaska, judicial determination of rehabilitation can relieve some offenders of the duty of lifetime registration. In Alaska, there is no relief early from registration. In this case, we don't have a college student. In this case, we don't have somebody who is 18 having sex with their 17-year-old girlfriend, consensual act. These examples referred to by Mr. Rothschild do not apply in this case. In this case, we have a sex offender who followed a female jogger and assaulted her with the intent to commit oral copulation. This is the type of offender that the registration statute was intended to keep track of. The petitioner would have to have shown by the clearest proof that California's statute was punitive to prevail on this ex post facto claim. There was no clear error here in finding it. It's a regulatory statute, and Smith v. Doe, I think, bears that out amply. On the due process issue, the challenge was based solely on the type of notice. In this case, which has some unique facts, the offender was notified when he was released from prison in the early 80s that he would have to register for his crime of assault with intent to commit oral copulation, and what no one noticed was that that offense had been dropped from one part of the registration statute during a recodification. Counsel, this part of the case does seem at least a little peculiar because the defendant registered when he wasn't required to and stopped registering when he was required to. It's a little topsy-turvy. Does that have any legal significance in your view? I think the only legal issue here is whether or not there was clear error in applying Lambert v. California, which is the U.S. Supreme Court case dealing with what kind of notice is required for due process purposes. And Lambert says that due process under the federal Constitution requires actual knowledge or the probability of such knowledge of the requirement to register. So that is what both the appellate court in the state and the district court looked at. Did this particular offender have actual knowledge or the probability of such knowledge of his duty to register when he failed to re-register in California when he moved here, returned here from Texas in 1996? He had originally been released in the early 80s, given the form saying he had to register. Nobody realized that his offense was omitted from one part of 290 at that time. So he did register, being given the official notice that he was required to, and he complied with the registration statute two further times while living in California. Every time you change your address as a registrant, you must notify the registering agency where you're now living. And he did that appropriately twice after he initially registered. As a result of having registered three times in the state of California before he moved to Texas, when he returned, and when he returned in 1996, it was four years after the California legislature realized that the recodification of 290 had omitted his crime from subdivision A of 290, although it always remained in the penalty subdivision. And there's no indication in this record that I could see, but I want to confirm this with you as well. I saw nothing to suggest that he relied on any legal advice or other reasoned basis for saying, well, gee, I registered, but I wasn't required to at the time. No, as far as the record shows, he believed and did have actual knowledge at the time that he returned to California that he was required to register. There was a court trial in this case on the violation of the registration statute in 1997. Petitioner chose not to testify. The trial court found, based on his prior registrations in the state, that he did have actual knowledge of his duty to register. And I would point out that because his return to the state was four years after his crime was correctly added back into subdivision A of 290, it was really not even retroactively applied to him. He violated the registration law four years after it was added into 290 again. So I'm not even sure we have a retroactive application of a statute in this case. Counsel, let's suppose that Mr. Hatton had been given correct information when he was first convicted and that somebody said, well, there's a gap here in the statute, it's probably a mistake, but, you know, you don't have to register. We'll pick that up with the legislature, but for right now you don't have to register. And then he leaves and goes to Texas and he comes back and in the interim California has corrected this omission. Now, under Lambert, what has to happen at that point? Under Lambert, since he would not have been given any notice, we would have to prove either he had actual knowledge of his duty to register so he was aware of the statute or that he had the probability of such knowledge. Now, probability of such knowledge might mean, for example, that all 50 states today have sex offender registration. Almost all 50, but not all 50, about 40 have sex offender notification. And because of the new notification laws that have been enacted in the last 10 years, it's really publicized the sex offender registration requirement. The state could make an argument, if it wished to, that there would be the probability of such knowledge today, even though at the time Lambert was decided, in that case it was an L.A. municipal ordinance. Very few municipalities had ordinances like the Los Angeles ordinance requiring all felons to register with the city. So it's a very different situation than we have today when someone's convicted of a sex offense. But in California, I can speak for the state because I do represent our sex offender registration unit, we would not advise prosecution of an offender who had never been given actual notice of his duty to register in California. So what would happen in the scenario you pose in actuality, if Mr. Hatton came to the state, he'd never registered or been told that he had a duty to register here before, he'd never signed the state 8047 form, which he did sign when he was released from prison, he would be given that form, he would be advised of his duty to register, he would be given five working days then to go down after he signed the notification form and register. If he failed to do that within five days of being notified, then he could be arrested. Counsel, what if after Mr. Hatton was given bad advice and he in fact registered, Mr. Hatton learned what the correct, what the law actually said, and said to himself, well, I don't have to register if I change my address or anything else because the law doesn't apply to me and I've registered, but I did so incorrectly the first time, leaves and goes to Texas, then comes back to California, and in the interim California has corrected the omission. Now what would happen in that case? Well, again, we would still have to show that he had either knowledge or the probability of such knowledge. So you're saying now he has knowledge that he doesn't have to register, but in fact, of course, in the interim, in his absence, we've changed the statute. Right. There are cases in the Ninth Circuit, Reyes and Vassaras, which both say that codified law, when one is put on notice by circumstances that there may be a law affecting them, that a codified statute is enough notice to satisfy due process. So you'd either look to those, you know, because otherwise, what are the results? If you have a law in the books for four years and someone doesn't happen to look it up, I mean, isn't this person who was originally told he had to register and then later learned it wasn't true anymore, when he returns to California, isn't he at least on notice? There's a possibility that he may have to register, that the law may have changed. He should be at least on advisement that he should check the statute to see how it now applies to his registrable, you know, whether his offense has become registrable in the interim time that he was gone from the state. Because he knows that at one point he was told it was registrable, he's learned it was in the air, but he knows that there's a possibility that sex offenders may have to register with the state. So I would say he's on advisement or he's on notice that he should check at that point. He has the probability of such knowledge, even if he doesn't have actual knowledge. The statute's there on the books. It would have been easy to find out whether he – all he had to do was call up the sex offender registration unit at the Department of Justice, and he knew how to contact us because he gave us notice when he left the state that he was leaving and ask what his duty was, and he would have been informed, or a local police agency would have told him. Instead, he quietly moved into a California community. Nobody knew that he had previously been and should be a registered sex offender until he was investigated for a sufficient incident of following a jogger and showing a pornographic photograph in her path. So I would submit to the court that even in that scenario, the person has the duty to check under Ninth Circuit cases, Reyes and Dasseras, and that such a person would have the probability of such knowledge that they may be required to register. If there are no further questions, I'll submit it. Thank you. Thank you. We'll give you two minutes for rebuttal. We used up some of your time with questions. Thank you, and I'll hope not to use it, Justice Kagan. There have been two references to the underlying facts of the offenses. First, as to what happened when Mr. Hatton was convicted in 1982. There's no evidence of that in the record. Whatever. It's not before the Court. There's another reference as to what facts brought him before the Placer County Court. The reference in the briefs is in counsel's argument citing back to another brief she wrote in another argument. There is no evidence of that in the record. Period. Are those things of which we can or should take judicial notice if they are in the record of other cases? Pardon me? Are those matters of which we could take judicial notice as much as they are part of official records of other cases involving the same individual? You could, but it's not part of the appellate record. But that is not as important, if I may, as far as the ‑‑ there's no reference anywhere of what occurred in the initial case in 82. But more importantly are the points brought up by Judge Bybee. Page 29 of our excerpts of record constitute the notice that Mr. Hatton was given. And the Court of Appeal and the Attorney General's Office refer to this as fine print boilerplate. But when you look at the bottom, it's highlighted and it's in capitals. Who must register? And it lists. And in the upper right corner of the document, it says the reason for detention, 220PC, assault with intent to commit oral copulation. Any human being that can read would know that assault with intent to commit oral copulation is not someone who must register on this form. Then you look at the circumstances within which Mr. Hatton signed it. He signed it ten days before he was released from prison, because it says on the form, you don't get released unless you acknowledge signing it. Then he registered three times while he's on parole. And I've cited two in the briefs, the California law that says if you don't do what they tell you to do on parole, including registering, you go back to prison. That's the factual pattern that the record confirms this occurred with him. Once he's off parole, he stopped registering. And that ties to what Justice Bybee was talking about as far as the notice. Thank you. Thank you, counsel. Well, the case just argued is submitted, and I appreciate the arguments of both counsel on this very well-presented case.
judges: Graber, Wardlaw, Bybee